*653 OPINION OF THE COURT
F. Warren Travers, J.
Petitioners commenced this CPLR article 78 proceeding challenging various practices of respondents which relate to application and interpretation of State Finance Law § 136-a.
Respondents argue that the first cause of action is moot, that the petitioners seek an advisory opinion on the remaining issues or in the alternative that the practices of respondents are permissible under section 136-a. This court finds no reported case interpretation of this 1980 law amended in 1982.
The petitioners seek a judgment in the nature of prohibition preventing the respondents from implementing the new practices outlined in the New York State Department of Transportation’s revised consultant selection process. Respondents seek dismissal of the petition.
The first cause of action concerns a request for proposals (RFP) sent out by the Department of Transportation (DOT). The RFP solicited proposals for a study evaluating the use of coal combustion by-products for highway construction purposes. Funding for this study was not available and the RFP was canceled by DOT. The legal issue involved in this cause of action was the inclusion of cost as one of the criteria for evaluation of proposals. The RFP has been withdrawn and the matter is now moot. The first cause of action is dismissed.
As to the remaining causes of action, DOT has, in effect, a revised consultant selection process. DOT has implemented the revised consultant selection process. The court does not, therefore, consider the matter advisory but rather an actual controversy.
DOT in selecting professional firms and negotiating fair and reasonable prices for professional services from consultant firms, pursuant to State Finance Law § 136-a, uses three procedures that are challenged in the second, third and fourth causes of action.
State Finance Law § 136-a mandates that, in the procurement of architectural, engineering or surveying services, selection of the professional firm to provide services shall be based on the qualifications of the firm. Executive Department, Division of the Budget, Budget Policy and Reporting Manual Transmittal Notice No. 12, February 1, 1981, sets forth the guidelines for procurement of such services. The State agency procuring services is to rank the firms on the basis of qualifications, selecting at least three firms deemed to be the most *654 highly qualified. The agency will then enter into negotiations with the most highly qualified, to obtain the services at compensation which the agency determines in writing to be fair and reasonable to the State. Budget Notice No. 12 prohibits competitive price bidding. If a satisfactory contract cannot be negotiated, then the agency is to undertake negotiations with the second highest qualified firm, and so on until a satisfactory agreement is reached.
DOT, in negotiating fair and reasonable prices, has established a maximum overhead guideline or multiplier. Such guidelines are referred to in Budget Notice No. 12 (§ 6-g) but not mandated. DOT has also established a salary guideline, which is tied to the salary of DOT’s chief engineer. Respondents assert that guidelines were established to ensure that compensation paid to consultant firms is fair and reasonable to the State of New York. The petitioners argue that the use of these guidelines violates the duty to negotiate under State Finance Law § 136-a.
The overhead guideline is the subject of the third cause of action and the fourth cause of action involves the salary guideline.
Petitioners contend that the guidelines establish a price which DOT will pay, thereby dictating the price in violation of the duty to negotiate. The court does not agree.
The guidelines establish a maximum price which will be paid by DOT. DOT asserts that the guidelines were set at levels it believes, after surveying market conditions, are fair and reasonable to the State. This court finds nothing in State Finance Law § 136-a which prohibits the establishment of guidelines.
The guidelines simply establish a level of compensation above which DOT believes compensation paid, would not be fair and reasonable to the State. Nothing in the statute mandates that DOT retain the professional firm that charges the most. The statute does mandate that DOT retain the most qualified firm at a fee fair and reasonable to the State. If a particular firm does not believe the guideline máximums are adequate, it simply does not have to seek business from DOT. On the other hand, if the guidelines are set too low, DOT will not be able to find firms willing to provide professional services. Market conditions should eventually establish a level that satisfies the needs of both parties.
All of this is in accordance with the statutory mandate of *655 obtaining the best qualified firm at a price that is fair and reasonable. Excessive compensation is clearly not the purpose of State Finance Law § 136-a. The guidelines are merely a method to prevent what DOT believes to be payment of excessive compensation. The third and fourth causes of action are dismissed.
The second cause of action involves the submission of additional information on selected projects. This additional information, it is asserted, converts the negotiation process into one that is nothing more than competitive price bidding in violation of section 136-a.
DOT has a two-step selection process which is employed in the occasional exceptionally large and/or complicated project. In step one, DOT ranks the firms according to their qualifications. Then the most highly qualified firms are asked to submit technical proposals. Based upon a review of the technical proposals, DOT then selects the most highly qualified firm, and commences negotiation as to fee. In addition to the proposals, the firms are asked to submit a sealed envelope containing a staffing or manning table that shows the work hour estimate by grade level.
Respondents assert that, until the ranking process, based upon the technical proposals is completed, the sealed envelopes containing the manning tables are not opened. Respondents assert that the manning tables are used by DOT to verify the accuracy of its own staff estimate of staffing categories and man-hours, and to assist in negotiating the precise scope of the project if necessary with the consultant firm.
Petitioners assert that these manning tables can be converted into compensation proposals, and turn the selection process into a competitive bidding process.
The court does not find the requirement of submission of manning tables to be a violation of section 136-a. The respondents assert a reasonable purpose to the requirement.
The petitioners, as to this particular cause of action, are speculating that the manning tables will convert the process into competitive bidding. Such mere speculation is insufficient to authorize the court to prohibit the submission of manning tables.
It is possible, that in a specific case, a party may be able to establish facts that would prove the process was not properly followed. As a challenge to the general procedure, however, the submissions by petitioners in this case are inadequate to *656 support the claim that the manning tables would convert the process into competitive bidding. The second cause of action is also dismissed.
All papers are returned to the respondents’ attorney for submission of a judgment dismissing the proceeding without notice, without costs, with this decision attached.